UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELSA DIAZ REYES,

              Petitioner,

    v.

CHAD WOLF, et al.,

              Respondents.

Case No. C20-0377-JLR-MAT

REPORT AND RECOMMENDATION

I.    INTRODUCTION

Petitioner, who is detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, bring this 28 U.S.C. § 2241 immigration habeas action through counsel to obtain a bond hearing. Currently before the Court is the Government's motion to dismiss (Dkt. 8; *see also* Dkt. 13), which Petitioner opposes (Dkt. 10). Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss be DENIED, Petitioner's habeas petition be GRANTED, and the Government be ordered to provide Petitioner with a bond hearing at which she must be released on bond or reasonable conditions unless the Government establishes by clear and convincing evidence that she presents a danger to the community or a

REPORT AND RECOMMENDATION - 1

flight risk.[1]

## II. BACKGROUND

Petitioner is a native and citizen of El Salvador. (*See* Dkt. 9-1 at 2-3; Dkt. 1 at ¶ 8.) She first entered the United States in 1995. (Dkt. 1 at ¶ 13.) From approximately 1997 to 2001, she was trafficked by the abusive father of her children within the United States. (*Id.* at ¶ 14.) She was subjected to severe sexual and physical abuse and threats to force her to answer phone calls and arrange deliveries for her trafficker's drug trafficking business. (*Id.*) In 2001, Petitioner's trafficker fled to Mexico to avoid persecution and, through threats and coercion, obligated Petitioner to also move to Mexico with her children. (*Id.* at ¶ 15.) While in Mexico, her trafficker was arrested and extradited to the United States for prosecution. (*Id.*) Petitioner remained in Mexico with her children. (*Id.*)

On or about May 4, 2010, after Petitioner had learned her trafficker was to be released from criminal custody and deported to Mexico, she attempted to re-enter the United States. (*See id.* at ¶¶ 8, 16.) The same day, she was arrested by U.S. Customs and Border Patrol officers near Hidalgo, Texas. (*Id.* at ¶ 17; *see also* Dkt. 9-2.) She was given an expedited removal order and subsequently transferred to U.S. Marshal custody on an outstanding arrest warrant for her participation in her trafficker's drug trafficking business. (Dkt. 1 at ¶ 17.)

During Petitioner's criminal proceedings, which took place in the U.S. District Court for the Northern District of California, Petitioner was assessed by a domestic violence expert witness. (*Id.* at ¶ 18.) The assessment, which is used to identify women who may be at risk for being killed by their intimate partners, revealed that Petitioner had acted under duress when she participated in some drug sales and was in "lethal danger from [her trafficker] should she have refused to follow

---

[1] Because the parties have thoroughly briefed the issues before the Court, Petitioner's request for oral argument (Dkt. 10 at 1) is DENIED.

his orders." (*Id.* (quoting Dkt. 2-1 at 15).)

On August 11, 2011, Petitioner was convicted of conspiracy to possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846. (*Id.* at ¶ 19; Dkt. 9-3.) The presiding judge rejected the plea agreement of 135 months and sentenced Petitioner to 120 months, the mandatory minimum. (Dkt. 1 at ¶ 20; Dkt. 2-2; Dkt. 9-3.) During the sentencing hearing, the judge explained that "in light of the record, [the plea agreement] was overly harsh and inappropriate and not in the public interest . . . ." (Dkt. 2-4 at 3.) The judge noted that he had "rarely seen a person, a defendant, treated in the way that this defendant was treated by [her trafficker,] the lead defendant in this case." (*Id.* at 5.) He explained that Petitioner "certainly suffered quite a bit and that suffering contributed substantially to her involvement in this crime," and based on the nature of the case and Petitioner's role, "even the sentence I'm required by Congress to give her is overly harsh." (*Id.*)

On July 18, 2018, Petitioner was transferred from the custody of the Bureau of Prisons to the custody of ICE at the NWIPC. (Dkt. 1 at ¶ 22.) On July 23, 2018, Petitioner had a credible fear interview with an asylum officer from U.S. Citizenship and Immigration Services ("USCIS"). (*Id.* at ¶ 23.) On August 23, 2018, after a positive credible fear determination by the asylum officer, the U.S. Department of Homeland Security ("DHS") placed Petitioner in removal proceedings and referred her case to an immigration judge ("IJ") for adjudication of her claim for humanitarian protection. (*Id.*; Dkt. 9-4.) Petitioner appeared *pro se* in all her proceedings before the immigration court. (Dkt. 1 at ¶ 25.)

On September 21, 2018, Petitioner appeared for a master calendar hearing before an IJ, who scheduled an individual calendar hearing for November 8, 2018. (Dkt. 9-7 at ¶ 3.) On October 1, 2018, an IJ issued an order following a custody redetermination hearing, denying Petitioner's

REPORT AND RECOMMENDATION - 3

1  request for release on bond because she was subject to mandatory detention under 8 U.S.C. §
2  1226(c) and therefore statutorily ineligible for bond. (*Id.* at ¶ 5; Dkt. 9-6.) On November 8, 2018,
3  Petitioner appeared for her individual calendar hearing before an IJ. (Dkt. 1 at ¶ 26; Dkt. 9-7 at ¶
4  6.) Following the hearing, the IJ denied Petitioner's application for relief and ordered her removed
5  to El Salvador. (Dkt. 1 at ¶ 26; Dkt. 9-7 at ¶ 6.) Petitioner timely appealed the IJ's decision to the
6  Board of Immigration Appeals ("BIA"). (Dkt. 1 at ¶ 27; Dkt. 9-7 at ¶ 7.)

7  On March 27, 2019, while Petitioner's appeal to the BIA was pending, she filed an
8  application with USCIS for a T nonimmigrant visa, which provides lawful status to certain victims
9  of human trafficking. (Dkt. 1 at ¶ 28.)

10 On April 16, 2019, the BIA dismissed Petitioner's appeal of the IJ's decision in her
11 immigration case. (Dkt. 1 at ¶ 32; Dkt. 9-7 at ¶ 8.) On April 19, 2019, Petitioner filed a petition
12 for review and motion to stay her removal in the Ninth Circuit. (Dkt. 1 at ¶ 33; *Diaz-Reyes v. Barr*,
13 No. 19-70955, Dkt. 1 (9th Cir. Apr. 19, 2019).) On May 7, 2019, Petitioner filed a motion to hold
14 her petition for review in abeyance pending USCIS's decision on her T visa application. (Dkt. 1 at
15 ¶ 33; *Diaz-Reyes*, Dkt. 8.) The government opposed this motion. (*Diaz-Reyes*, Dkt. 9.) On August
16 29, 2019, the Ninth Circuit granted Petitioner's motions to stay her removal and to hold the petition
17 for review in abeyance. (Dkt. 1 at ¶ 33; *Diaz-Reyes*, Dkt. 13.)

18 On March 9, 2020, Petitioner filed the instant habeas petition challenging her continued
19 detention in ICE custody and seeking a bond hearing before an IJ. (*See* Dkt. 1.) On April 8, 2020,
20 USCIS denied Petitioner's T visa application. (Dkt. 9-8.) On May 26, 2020, the Ninth Circuit lifted
21 the stay of proceedings and set a briefing schedule for Petitioner's petition for review. (*Diaz-Reyes*,
22 Dkt. 19.) The government filed an answering brief on July 27, 2020, and the optional reply brief
23 is due 21 days later. (*Id.*, Dkts. 19, 24.)

REPORT AND RECOMMENDATION - 4

III. DISCUSSION

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of noncitizens who are in removal proceedings.[2] Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory until removal proceedings have concluded. 8 U.S.C. § 1226; *Jennings v. Rodriguez*, 138 S. Ct. 830, 846-48 (2018). The parties do not dispute that Petitioner is detained pursuant to § 1226(c). Thus, her current detention is mandated by statute until her removal proceedings have concluded, and she is not statutorily eligible for an individualized determination as to whether she should be released on bond. *See Jennings*, 138 S. Ct. at 842, 847.

Petitioner argues that her prolonged detention violates her due process rights and that she is entitled to a bond hearing where the Government must bear the burden of justifying her continued detention by clear and convincing evidence. The Government counters that her continued mandatory detention is reasonable and that if the Court orders a bond hearing, the burden should be on Petitioner to justify her release. For the reasons discussed below, the Court concludes that Petitioner should be afforded a bond hearing where the burden is on the Government to justify continued detention by clear and convincing evidence.

A. Legal Background

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a due process challenge to § 1226(c). The Supreme Court explained that Congress drafted § 1226(c) to respond

---

[2] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

to the high rates of crime and flight by removable noncitizens convicted of certain crimes and held that "the Government may constitutionally detain deportable [noncitizens] during the limited period necessary for their removal proceedings." *Id.* at 518-21, 526. In so holding, the Supreme Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in the vast majority of cases, resulted in detention of less than about five months. *Id.* at 529-30. Justice Kennedy's concurring opinion, which created the majority, reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized determination as to his [or her] risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532.

Since *Demore*, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 256 (9th Cir. 2018). Overwhelmingly, district courts that have considered the constitutionality of prolonged mandatory detention—including the undersigned and other judges in this District—"agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *Report and Recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoting *Sajous v. Decker*, No. C18-2447, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018), and collecting cases); *see also Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) (Robart, J.) ("[U]nreasonably prolonged detention under [8 U.S.C.] § 1225(b) without a bond hearing violates due process."); *Djelassi v. ICE Field Office Director*, 434 F. Supp. 3d 917, 923-24 (W.D. Wash. 2020) (Martinez, C.J.) (granting habeas

REPORT AND RECOMMENDATION - 6

1  petition and ordering bond hearing to noncitizen whose mandatory detention had become
2  unreasonably prolonged).

3  B.      Test to Determine Reasonableness of Prolonged Detention Under § 1226(c)

4       The undersigned has previously adopted a "multi-factor analysis that many other courts
5  have relied upon to determine whether § 1226(c) detention has become unreasonable." *Martinez*,
6  2019 WL 5968089 at *9. Those factors include:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* (citing, *inter alia*, *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018)). These factors are derived from the Supreme Court's decisions in *Demore* and *Zadvydas v. Davis*, 533 U.S. 678 (2001), and pre-*Jennings* circuit court cases holding, as a matter of constitutional avoidance, that § 1226(c) implicitly authorizes detention for only a reasonable amount of time. *See Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016), *vacated in light of Jennings*, 2018 WL 4000993 (1st Cir. May 11, 2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 222-23 (3d Cir. 2011), *abrogated by Jennings*, 138 S. Ct. 830; *Ly v. Hansen*, 351 F.3d 263, 269-70 (6th Cir. 2003), *abrogated by Jennings*, 138 S. Ct. 830); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018).

Both parties ask the Court to modify this test. The Government advocates for the three-factor test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which "requires considering (1) the private interest affected, (2) the government's interest, and (3) the value added by additional or substitute procedural safeguards in the situation before the court." *Banda*, 385 F. Supp. 3d at

REPORT AND RECOMMENDATION - 7

1106 (citing *Mathews*, 424 U.S. at 334). The Government recognizes that judges in this district have declined to apply *Mathews* in similar cases. *See Id.* at 1106-07; *Djelassi*, 434 F. Supp. 3d at 920-21. As the Honorable James L. Robart has explained, "[T]he *Mathews* test balances the benefits or burdens of 'additional or substitute procedural safeguards,'" and "does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106-07 (quoting *Mathews*, 424 U.S. at 335). Nevertheless, the Government asks the Court to apply *Mathews* and take into account the burden on the government in providing a bond hearing. (Dkt. 8 at 6-7.) None of the courts of appeals that considered the reasonableness of prolonged detention prior to *Jennings* adopted this factor, and the Government does not identify any post-*Jennings* district court cases employing a multi-factor test that have included this factor in their analyses. The Government also fails to explain how such a factor would assist the Court in determining whether Petitioner's continued mandatory detention "is necessary to fulfilling Congress's aims of removing criminal [noncitizens] while preventing flight and recidivism," which is the purpose of the multi-factor tests adopted by a majority of courts. *Sopo*, 825 F.3d at 1217; *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("The government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings, but any detention incidental to removal must 'bear[ ] [a] reasonable relation to [its] purpose.'") (quoting *Zadvydas*, 533 U.S. at 690, alterations in *Hernandez*). Accordingly, the Court declines to incorporate *Mathews* into the reasonableness test for prolonged mandatory detention.

Petitioner is also dissatisfied with the *Martinez* test. She asks the Court to adopt the 6-factor test from *Banda*, a case involving prolonged mandatory detention under the expedited removal statute, 8 U.S.C. § 1225. (Dkt. 10 at 3-7.) The *Banda* and *Martinez* tests are identical except *Banda*

REPORT AND RECOMMENDATION - 8

does not include *Martinez*'s third and fourth factors—whether the detention will exceed the time the petitioner spent in prison for the crime that made him or her removable, and the nature of the crimes the petitioner committed. *Banda*, 385 F. Supp. 3d at 1106. These are the two factors that relate to criminal history. As the Government points out, it makes sense that *Banda* did not consider the petitioner's criminal history because the petitioner was apprehended at the U.S. border and had no known criminal convictions. Nevertheless, some courts considering § 1226(c) detention have not included factors related to criminal history. *See, e.g.*, *Bolus A.D. v. Sec's of Homeland Sec.*, 376 F. Supp. 3d 959, 961 (D. Minn. 2019); *Baez-Sanchez v. Kolitwenzew*, 360 F. Supp. 3d 808, 815-16 (C.D. Ill. 2018).

Petitioner argues that *Martinez* provided no justification for including the criminal history factors in its analysis, and she contends these factors are relevant only to whether she should be released on bond, not whether she should receive a bond hearing in the first instance. (Dkt. 10 at 5.) She also maintains that her entitlement to due process should not rest on the fact that she committed a crime, asserting that the Supreme Court has not relied on an individual's criminal history when assessing due process claims. (*Id.* at 5-6 (citing *Zadvydas*, 533 U.S. at 684, 700-01; *Foucha v. Louisiana*, 504 U.S. 71, 78-79 (1992); *Jackson v. Indiana*, 406 U.S. 715, 724 (1972); *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249-50 (1972)).)

The Court is not persuaded by Petitioner's arguments. "Reasonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of *all* of the circumstances of any given case." *Reid*, 819 F.3d at 497 (quoting *Diop*, 656 F.3d at 234, emphasis added). Thus, prior to *Jennings*, the courts of appeals that adopted multi-factor reasonableness tests to assess prolonged mandatory detention under § 1226(c) declined "to develop an exhaustive taxonomy" and instead delineated factors to serve as "guideposts for other courts conducting such a reasonableness review." *Sopo*,

825 F.3d at 1218 (quoting *Reid*, 819 F.3d at 501). Several circuit courts considered, among other factors, whether the detention exceeded the time the petitioner spent in prison for the crime that made the petitioner removable. *Reid*, 819 F.3d at 500; *Ly*, 351 F.3d at 271; *Sopo*, 825 F.3d at 1218. As such, *Martinez*'s consideration of criminal history has solid grounding in case law. Furthermore, a comparison between the length of civil and criminal detention informs whether prolonged mandatory immigration detention has become unreasonable. For example, this factor weighed in favor of granting a bond hearing to the petitioner in *Ly*, who spent approximately 12 months serving his criminal sentences and over 16 months in civil immigration detention. *See Ly*, 351 F.3d at 265, 271. The Court finds that these factors are relevant to assessing the reasonableness of prolonged mandatory detention under § 1226(c).

Finally, the cases Petitioner cites are readily distinguishable. All four involved potentially indefinite civil detention, which is not at issue in this case. *See Zadvydas*, 533 U.S. at 700-01 (potentially indefinite post-removal order immigration detention); *Foucha*, 504 U.S. at 83 (potentially indefinite commitment to mental institution of criminal defendant acquitted by reason of insanity); *Jackson*, 406 U.S. at 720 (potentially indefinite commitment to mental institution of criminal defendant who was incompetent to stand trial on the charges filed against him); *McNeil*, 407 U.S. at 249-50 (potentially indefinite commitment to mental institution of state prisoner who had completed his criminal sentence). In addition, none of the cases involved a test to assess the reasonableness of the detention. *See Zadvydas*, 533 U.S. at 700-01 (establishing burden shifting framework to determine whether detention had become indefinite); *Foucha*, 504 U.S. at 77-78 (holding that insanity acquittee no longer met constitutional requirements for detention because he was no longer mentally ill, and therefore the State had to provide him with constitutionally adequate procedures to establish an alternative ground for confinement); *Jackson*, 406 U.S. at 739

1  (holding that criminal defendant committed solely on account of incapacity to proceed to trial
2  "cannot be held more than the reasonable period of time necessary to determine whether there is a
3  substantial probability that he will attain that capacity in the foreseeable future," but not
4  establishing a test to determine whether the period of time had become unreasonable); *McNeil*,
5  407 U.S. at 249-52 (ordering release of petitioner who had completed his sentence and whose
6  prolonged civil commitment rested solely on "procedures designed to authorize a brief period of
7  observation"). Given these different between these cases and the case at bar, the fact that the
8  Supreme Court's due process analyses did not depend on whether the individual had committed a
9  crime does not preclude the Court from considering that factor here.

10  C.     Application of the *Martinez* Factors

11  Having determined that the *Martinez* factors provide an appropriate framework to analyze
12  Petitioner's claim, the Court discusses each below. As explained, the Court concludes that
13  although not all of the factors weigh in Petitioner's favor, she has established that her continued
14  detention without a bond hearing violates her due process rights.

15         1.     *Length of Detention to Date*

16  The length of detention is the most important factor. *E.g.*, *Martinez*, 2019 WL 5968089, at
17  *9; *Sajous*, 2018 WL 2357266, at *10 (citing *Zadvydas*, *Sopo*, and *Diop*). The longer mandatory
18  detention continues beyond the "brief" period authorized in *Demore*, the harder it is to justify. *See,*
19  *e.g.*, *Martinez*, 2019 WL 5968089, at *9 (nearly 13-month detention weighed in favor of granting
20  a bond hearing); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963-64 (D.
21  Minn. 2019) ("Although there is no bright-line rule for what constitutes a reasonable length of
22  detention, Petitioner's [12-month] detention has lasted beyond the 'brief' period assumed in
23  *Demore*."); *Sajous*, 2018 WL 2357266, at *10 ("[D]etention that has lasted longer than six months

is more likely to be 'unreasonable', and thus contrary to due process, than detention of less than six months."). Petitioner has been held in ICE custody since July 19, 2018, over 24 months. This factor weighs strongly in favor of granting her a bond hearing.

### 2. *Likely Duration of Future Detention*

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. The Ninth Circuit recently lifted the stay of proceedings in Petitioner's petition for review, and briefing is almost complete. It may take another 9-12 months or longer for the Ninth Circuit to issue its decision. *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last visited 8/5/2020). Accordingly, this factor weighs in Petitioner's favor.

### 3. *Criminal History*

Third and fourth, the Court reviews the length of detention compared to Petitioner's criminal sentence and the nature of her crime. *Martinez*, 2019 WL 5968089, at *9; *Cabral*, 331 F. Supp. 3d at 262. Petitioner was sentenced to 10 years in prison for a serious drug-related offense and was released after approximately seven years. She has been in immigration detention for just over two years. It appears unlikely that Petitioner's pre-removal order detention will match the length of time she spent in prison. These factors thus weigh against a finding that her detention is unreasonable. Nevertheless, the Court finds that the weight of these factors is mitigated somewhat by the sentencing court's statement that he believed the mandatory minimum sentence was overly harsh considering the circumstances Petitioner's participation in the crime and the treatment she suffered at the hands of her trafficker.

   4.  *Conditions of Detention*

Next, the Court considers the conditions at the NWIPC where Petitioner is detained. *Martinez*, 2019 WL 5968089, at *9. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger [the] argument that he [or she] is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (quoted source omitted). Petitioner contends that the conditions at the NWIPC are similar to those in many prisons and jails. (Dkt. 10 at 10.) The Court agrees.

The NWIPC is a private detention facility run by The GEO Group, Inc. ("GEO"), an independent contractor with ICE that provides the facility, management, personnel, and services for 24-hour supervision of the detainees in ICE custody at the NWIPC. (Dkt. 14-2 at ¶ 4.) The NWIPC has the capacity to house 1,575 detainees and historically often operates near capacity. (Dkt. 14-2 at ¶ 6.) There are 21 housing units, one of which includes an Administrative Segregation Unit and a Disciplinary Management Unit. (*Id.* at ¶ 27, n.4.) Detainees are housed according to classification level, and detainees of different classification levels may not ordinarily be housed together in the same housing unit. (*Id.* at ¶ 28.) Male and female detainees are housed in separate units. (*Id.*) Most movement within the facility is unit-specific, meaning each housing unit has a designated time to go to recreation, religious services, and the law library. (*Id.* at ¶ 32.) Petitioner is allowed access to a small outdoor area for one hour a day. (Dkt. 11 at ¶ 9.) She is housed in a group cell setting, crowded together with many other women, where she shares eating and sleeping space, equipment, telephones, toilets, showers, and other daily necessities. (*Id.* at ¶ 6.) The Court concludes that these conditions are "similar . . . to those in many prisons and jails." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting) (determining that immigration detainees were held in circumstances similar to many penal institutions; *see also Guerrero-Sanchez v. Warden York Cnty.*

*Prison*, 905 F.3d 208, 220 n.9 (3d Cir. 2018) ("[T]he reality [is] that merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures.") (quoted source omitted). Accordingly, this factor weighs in Petitioner's favor.

5. *Delays in Removal Proceedings*

The sixth and seventh factors involve consideration of "the nature and extent of any delays in the removal proceedings caused by the petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to [her] removal cannot undermine [her] claim that detention has become unreasonable." *Liban M.J.*, 367 F. Supp. 3d at 665 (citing *Hernandez v. Decker*, No. 18-5026, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.")). Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his [or her] incarceration." *Ly*, 351 F.3d at 272; *see also Sopo*, 825 F.3d at 1218 ("Evidence that the [noncitizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release cuts against the [noncitizen].")). Thus, this factor weighs against finding detention unreasonable when a noncitizen "has 'substantially prolonged his [or her] stay by abusing the processes provided,'" but not when he or she "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)); *see also Campbell v. Barr*, 387 F. Supp. 3d 286, 297 n.7 (W.D.N.Y. 2019). With respect to the government, "If immigration officials have caused delay, it weighs in

favor of finding continued detention unreasonable. . . . Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous*, 2018 WL 2357266, at *11 (citing *Demore* and *Reid*).

The parties do not contend that there was any unreasonable delay during Petitioner's removal proceedings before the IJ or during her appeal to the BIA. (*See* Dkt. 8 at 9; Dkt. 10 at 11-12.) The law is also clear that Petitioner should not be penalized for filing a petition for review. *See, e.g.*, *Hechavarria*, 891 F.3d at 56 n.6; *Ly*, 351 F.3d at 272; *Liban M.J.*, 367 F. Supp. 3d at 665. The primary dispute is whether the stay of proceedings in the Ninth Circuit, which Petitioner requested to pursue her T visa and which was granted over the government's objection, should weigh against her. (*See* Dkt. 8 at 9-10; Dkt. 10 at 11-12.) There is no evidence that Petitioner acted in bad faith or sought to deliberately slow the proceedings to obtain release, but her request delayed consideration of her petition for review for approximately 12 months, a significant amount of time. Ultimately, however, the Court need not determine whether the delay cuts against Petitioner because even assuming it does, the Court finds she is entitled to a bond hearing, as discussed below.

      6.    *Likelihood Removal Proceedings Will Result in a Final Order of Removal*

Finally, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." *Liban M.J.*, 367 F. Supp. 3d at 965. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10; *Sajous*, 2018 WL 2357266, at *11. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous* and

*Demore*). "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid*, 819 F.3d at 400-500).

The Government argues that Petitioner's petition for review is unlikely to be granted because the BIA's decision will be reviewed deferentially and Petitioner fails to criticize any particular aspect of the BIA's decision. (Dkt. 8 at 10-11.) In response, Petitioner generally asserts the petition for review may result in vacatur of her order of removal. (Dkt. 10 at 12.) The Court declines to weigh in on the merits of Petitioner's claims pending before the Ninth Circuit. Nevertheless, the Ninth Circuit did grant Petitioner's motion for a stay of her removal pending review, citing *Nken*, 556 U.S. at 418, and *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011). (*Diaz-Reyes*, Dkt. 13 at 1.) Those cases require a petitioner seeking a stay to make "a strong showing that [she] is likely to succeed on the merits." *Leiva-Perez*, 640 F.3d at 966 (quoting *Nken*, 556 U.S. at 426). Thus, because the Ninth Circuit found that Petitioner satisfied this standard, the Court presumes that Petitioner has asserted a good faith challenge to her removal. As such, this factor weighs slightly in Petitioner's favor.

   7.   *Weighing the Factors*

In sum, the following four factors weigh in favor of finding Petitioner's prolonged detention has become unreasonable: the length of her detention, which has surpassed 24 months and thus strongly favors Petitioner; the duration of future detention, which may last an additional nine months or more; the conditions of detention at the NWIPC, which are similar to many prisons and jails; and the likelihood removal proceedings will result in a final order of removal, which weighs only slightly in Petitioner's favor because the most the Court can presume is that she has raised a good faith challenge to her removal. Four factors also weigh in favor of finding Petitioner's

detention is reasonable and thus does not violate due process. The first two factors involve Petitioner's criminal history, which includes a conviction for a serious crime and a sentence that was far longer than her current detention; the weight of these factors, however, is mitigated somewhat by the circumstances surrounding Petitioner's participation in the crime and the sentencing judge's belief that the mandatory minimum was overly harsh in her case. Next, there is no dispute that the Government has not caused unreasonable delay. Finally, the Court assumes without deciding that Petitioner caused 12 months of delay by requesting and obtaining a stay of removal while her T visa application was pending with USCIS.

Having considered the totality of these factors, the Court finds that those favoring Petitioner weigh most heavily. Even assuming Petitioner caused 12 months of delay, there are still over 12 months of detention that cannot be attributed to her. *See Martinez*, 2019 WL 2019 WL 5968089, at *9 (detention lasting nearly 13 months favored a bond hearing). This is the most important factor. The length of future detention, the conditions of her detention, and her good faith challenge to her removal order all add to the weight of this factor. While Petitioner's criminal history and the absence of unreasonable delay caused by the Government counterbalance somewhat, they do not tip the scales against Petitioner. Accordingly, the Court concludes that Petitioner's mandatory detention of over 24 months under § 1226(c) has become unreasonable and in violation of her due process rights.

D.   Remedy

Petitioner seeks a bond hearing at which the Government bears the burden of justifying her continued detention by clear and convincing evidence. (Dkt. 10 at 14-15.) As Petitioner points out, this request is supported by ample authority from the Ninth Circuit and this District. *See, e.g.*, *Banda*, F. Supp. 3d at 1120-21 (requiring immigration judge to apply the procedural requirements

of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011)); *Djelassi*, 434 F. Supp. 3d at 923-24 (same); *Martinez*, 2019 WL 5968089, at *11 (same and collecting cases); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020) (holding that *Jennings* did not undercut the constitutional due process holding in *Singh*).

The Government nevertheless asserts that the Court should place the burden on Petitioner to prove she poses neither a flight risk nor a danger to the community. (Dkt. 8 at 12-13.) First, the Government argues that *Jennings* forecloses any requirement that the burden be placed on DHS. (*Id.* at 12.) The Government is incorrect; *Jennings* addressed statutory interpretation, not the constitutional requirements of due process. *See Aleman Gonzalez*, 955 F.3d at 781. Thus, it does not limit the relief the Court may award to remedy the constitutional due process violation here.

Second, the Government contends that the court in *Djelassi* recognized that placing the burden on the government at a bond hearing is clearly irreconcilable with *Jennings*. (Dkt. 8 at 12-13.) In *Djelassi*, the court considered whether *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008), remained good law following *Jennings*. *Djelassi*, 434 F. Supp. 3d at 927-28. In *Casas-Castrillon*, the Ninth Circuit held, *inter alia*, that the government must bear the burden of justifying prolonged detention under § 1226(a). *Casas-Castrillon*, 535 F.3d at 952. In *Djelassi*, the court concluded that this holding was clearly irreconcilable with the holding in *Jennings* that "there is no justification for any of the procedural requirements that the Court of Appeals layered onto § 1226(a) without any arguable statutory foundation." *Djelassi*, 434 F. Supp. 3d at 928 (quoting *Jennings*, 138 S. Ct. at 842).

The requirement for placing the burden on the Government in this case, however, is derived from the Ninth Circuit's decision in *Singh*, not from *Casas-Castrillon*. The Government argues that the Court is essentially relying on *Casas-Castrillon* because the court in *Singh* cited that case.

(Dkt. 8 at 13.) But although *Singh* relied in part on *Casas-Castrillon*, its constitutional due process holding was grounded in Supreme Court jurisprudence. *See Singh*, 638 F.3d at 1204 ("The Supreme Court has repeatedly reaffirmed the principle that 'due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money.'" (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996), internal quotation marks omitted)). In addition, the Ninth Circuit has recently reaffirmed that *Jennings* did not "undercut" *Singh*'s constitutional due process holding. *Aleman Gonzalez*, 955 F.3d at 781. Accordingly, the Court properly relies on *Singh*.

Finally, the Government asserts that placing the burden on the Government for § 1226(c) detainees is illogical because it provides more process than to those subject to discretionary detention under § 1226(a), who must establish that they do not pose a flight risk or danger to the community. Regardless of any perceived logical flaws, however, *Singh* remains good law following *Jennings*, and the Court must follow it. Petitioner is entitled to a bond hearing at which she must be released on bond or reasonable conditions unless the Government justifies her continued detention by clear and convincing evidence, as required by *Singh*.

## IV.   CONCLUSION

The Court recommends that the Government's motion to dismiss (Dkt. 8) be DENIED and Petitioner's habeas petition (Dkt. 1) be GRANTED. The Court further recommends ordering the Government to release Petitioner on bond or reasonable conditions unless, within 30 days of an order on this Report and Recommendation, Petitioner receives a bond hearing before an IJ at which the Government justifies her continued detention by clear and convincing evidence. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and

served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 28, 2020**.

Dated this 7th day of August, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20